**FIRST AMERICAN BANK OF WARREN, f.k.a. State Bank of Warren, Respondent,**

v.

**CARGILL, INCORPORATED, Appellant.**

**No. C5–85–2314.**

Court of Appeals of Minnesota.

May 6, 1986.

Review Denied July 16, 1986.

Harold G. Myhre, Warren, for respondent.

Robert L. Lowe, Minneapolis, for appellant.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Cargill, Inc. appeals from judgment against it based on breach of a contract between it and respondent, First American Bank of Warren. We affirm.

## FACTS

The Warren Grain & Seed Company (Warren) collapsed financially in 1977. In separate proceedings, Cargill was held to be Warren's principal due to its control and influence over Warren, and was therefore liable on Warren's transactions. *A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285 (Minn.1981). The trial court in *A. Gay Jenson Farms* found that the farmers owed Warren $204,387, Warren owed the farmers $2,137,025, and the court set off the sums to find the net owed each of the farmers by Warren. Judgment was entered for each of the farmers against both Cargill and Warren and was affirmed on appeal. The findings of amounts the farmers and Warren/Cargill owed each other were never appealed and are not challenged here, although the interpretation of the findings is at issue.

At one time, the First American Bank of Warren (Bank) and Cargill each claimed a superior security interest in Warren's accounts receivable. The two settled litigation between them on this issue by an agreement dated May 23, 1978, which provided that

all of the personal assets of Warren Grain & Seed Company heretofore col-

lected by either of the parties hereto or to be collected by said parties shall be placed in a separate fund in which the parties shall each have a 50 per cent interest.

The agreement stated that the assets to which the agreement applies include

A. All accounts receivable or proceeds from the sale of inventory collected by Warren Grain & Seed Company subsequent to April 30, 1977. (This explicitly includes funds on deposit with bank in Warren Grain & Seed Company accounts which were set off by bank and applied to indebtedness of Warren Grain & Seed Company.)

B. All collected accounts receivable and other funds on deposit with bank in an escrow account which total presently approximately $45,000.

C. *All uncollected accounts receivable* due Warren Grain & Seed Company. (emphasis added).

At trial, Cargill claimed that Bank was not entitled to the $102,193.95 (50% of the amount the farmers owed Warren) awarded it by the court, as that amount owed to Warren by certain farmers was never actually collected.

Warren had sold seed grain to farmers on account and, at the time of its collapse, farmers owed Warren money for this grain. Warren also bought grain from these farmers and, at the time of its collapse, Warren owed the farmers for grain it had received from them.

The trial court held that the $204,387.90 owed by the farmers were accounts receivable as contemplated by the agreement, and awarded judgment for the bank for half that amount. The trial court denied Cargill's motion for amended findings of fact and conclusions of law or vacation of the judgment and the taking of testimony. Cargill appeals.

### ISSUE

Did the trial court err in holding that the money owed Warren by the farmers constituted accounts receivable, rather than set-

offs against amounts owed the farmers, which did not constitute collection of any amounts by Warren/Cargill?

### ANALYSIS

We found no Minnesota case law directly in point discussing the specific issue of whether accounts receivable, when used to set off other monies owed, lose their identity as accounts receivable and thereafter cannot be lawfully considered as accounts receivable.

Cargill claims that because the sums Warren owed the farmers far exceed the sums the farmers owed Warren, resulting in a net due the farmers, the accounts were a liability, not an asset, of Warren. Cargill claims that the accounts were "mutual accounts." Cargill argues Warren could not have demanded payment from the farmers because no amounts actually were owed to it, and therefore the accounts were not an asset and the Bank was not entitled to half.

The trial court rejected Cargill's mutual account claim, reasoning that

[t]he accounts were treated separately by Judge McRae in his order of October 24, 1978, which established the amount Warren owed. One account was for grain sold to Warren and the other account was for goods and services delivered.

■ Cargill argues that this statement is wrong because Judge McRae, the trial court judge in *A. Gay Jenson Farms,* actually set off the obligations of Warren and the farmers, even though he initially calculated each debt separately. However, Cargill cites no authority for the proposition that such a set-off makes the accounts mutual accounts and automatically removes them from consideration as "accounts receivable." Nor does it cite any authority explaining the substantive significance of a mutual account. The trial court's interpretation was not in error.

■ Cargill also claims that the amounts set off were not "proceeds" within the meaning of the 1978 agreement. It argues that it never received any benefit from the set-off because it never collected

any money from the farmers. We agree with the trial court's reasons for rejecting this argument:

The amounts set off for Cargill's benefit constitute "proceeds" within the meaning of the agreement. It is real money that Cargill would otherwise have had to pay as principle for its insolvent agent, Warren Grain and Seed.

Cargill received a direct monetary benefit from the set-off because, were it not for the set-off, it would have had to pay $204,-387.90 more to the farmers. Cargill's reasoning is without merit. If a creditor is owed $100 by a debtor and the two parties agree that the creditor owes the debtor $10, and the creditor accepts $90 as full payment, there is a direct $10 benefit to debtor. The debtor has a $10 account receivable owed to it by the creditor, and the money does not lose that characterization simply because the debtor does not collect the $10 in cash but uses it to reduce an obligation of his own by $10.

### DECISION

The trial court did not err when holding that money owed appellant's agent constituted an account receivable.

Affirmed.